IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH CORSO,

        *Plaintiff,*

     v.

                                No. 21-cv-353-SB

CONCORDIA HEALTHCARE USA,
INC.,

        *Defendant.*

_____

Kevin Scott Mann, CROSS & SIMON, LLC, Wilmington, Delaware; David B. Gordon, Tiana A. Bey, MITCHELL SILBERBERG & KNUPP LLP, New York, New York

*Counsel for Plaintiff*

Alessandra Glorioso, Angela E. Dralle, William J. Miller, DORSEY & WHITNEY LLP, Wilmington, Delaware

*Counsel for Defendant*

_____

**MEMORANDUM OPINION**

March 24, 2023

BIBAS, *Circuit Judge*, sitting by designation.

Timing is everything. Whether by skill or luck, Joseph Corso timed his actions to squeak out a fraction of his contract claim. Change almost any fact, and his claim would be totally time-barred. But after interpreting the contract and plugging in the undisputed facts, no issue remains for trial. So I grant in part each party's motion for summary judgment.

# I. BACKGROUND

Corso and his business partners owned three companies that sold medical products. The partners were investigated by the federal government for fraud. To settle the fraud claims, Corso and his partners had to sell the companies. Concordia Healthcare bought them as one consolidated business, Complete Medical Homecare. This case is about one of the contracts executing that transaction.

## A. The contract

That contract addressed Corso's compensation. It was entitled "PROMISSORY NOTE" but functioned like an earnout—a contract in which the Corso's compensation depended on how well Complete Medical did over time. D.I. 1-1 at 2. It said that Concordia would pay Corso "a principal sum of *up to* US$4,200,000, together with interest … at an annual rate equal to six percent (6%), in the manner provided below." *Id.* (emphasis added). The "manner provided" was this: Concordia "shall deliver a principal payment annually … in an amount calculated in accordance with schedule A [] commencing on October 25, 2014, and on October 25 of each year thereafter *until the earlier of* the obligations hereunder being paid in full *or* October 25, 2020. Interest on the unpaid principal balance … shall be due and payable annually, together with each payment of principal." *Id.* § 1.1 (emphasis added).

Schedule A tied each year's principal payment to Complete Medical's earnings over the past year. The more the company made, the more Corso got. For each earnings range, schedule A prescribed a corresponding principal payment: if Complete

Medical earned $2 million or less in a given year, Corso got nothing; if it made between $2 million and $3 million, he got $120,000; and so on. *Id.* at 6.

The contract also allowed some modifications to the payment schedule. Key to this case is the contract's "Right of Setoff." *Id.* at 2 § 1.4. That provision gave Concordia "the right to withhold and set off against any amount [principal or interest] due hereunder the amount of damages for which [Concordia] is entitled to indemnification under, and as determined in accordance with the provisions of," the transaction's other agreements. *Id.* "Indemnification" means the "action of compensating for actual loss or damage sustained; the payment with this object." *Indemnification, Garner's Dictionary of Legal Usage* (3d ed. 2011). So to exercise its setoff right, Concordia must have been entitled to payment from Corso "in accordance with" the other agreements.

Those other agreements set out a three-step indemnification process. First, Concordia had to have been harmed by an indemnifiable event. Put differently, Corso had to indemnify "all Damages which [Concordia] may incur or suffer in connection with or relating to [a series of enumerated events]." *See* D.I. 47 at 78 § 10.2. "Damages" were defined as "any loss, damage, injury, award, fine, penalty, Tax, fee or expense." *Id.* at 31.

Second, Concordia had to "give prompt written notice" of its indemnification claim. *Id.* at 80 § 10.5. That notice had to have laid out the basic facts, the estimated damages, and the basis for indemnification. *Id.*

Third, the Damages had to have been "agreed to by the Indemnifying party [Corso] or finally adjudicated to be payable." *Id.* at 81 § 10.8. Once that happened, Corso had

3

to "satisfy [his] obligations as provided in Section 10.12." *Id.* That final section said Concordia could not collect from Corso directly. Instead, Concordia could "satisfy the Damages for which it is entitled to indemnification" only "by offsetting principal or interest" of the Promissory Note. *Id.* at 82 § 10.12.

So for Concordia to exercise its setoff right, it must have suffered "Damages," provided notice, and reached an agreement with Corso or gotten a final judgment fixing its Damages.

Returning to the contract at issue, it also specified what happened if Concordia failed to pay. The contract defined three "Events of Default." D.I. 1-1 § 2.1. The first two related to bankruptcy and are irrelevant here. § 2.1(a)–(b). The third dealt with Concordia's "failure … to pay any amount of principal or interest due under this Note within 15 days of such amount becoming due." § 2.1(c). If Concordia defaulted, Corso could "declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable" and "exercise any and all rights and remedies … under applicable law." § 2.3. In other words, he could accelerate the payments and sue for the whole amount.

Finally, the contract included a choice-of-law provision: "This Note will be governed by and construed under the laws of the State of Delaware without regard to conflicts-of-laws principles." § 3.5.

## B. The dispute

After the acquisition, Complete Medical rapidly declined. In 2014, it earned about $5.1 million. D.I. 43 at 112. So under schedule A, Corso was entitled to $480,000 on the principal plus $252,000 in interest (6% of the outstanding $4.2 million). In 2015,

4

Complete Medical made just $1.5 million, entitling Corso to no principal payment. *Id.* at 132. And because of the previous year's $480,000 principal reduction, the interest payment was now $223,200 ($4.2 million − $480,000 = $3.72 million; 6% of $3.72 million = $223,200). *Id.* at 149. In December 2015, Concordia dissolved Complete Medical. *Id.* at 134–35, 139. After dissolution, of course, its earnings were zero. *Id.* at 142. So Concordia told Corso that it would not make any future principal payments. *Id.* But the interest payments, at least in theory, would continue to be due.

Yet Corso never saw a dime. Concordia said that after several indemnifiable events, everything it owed was subject to setoff. Most importantly, just two days *before* the transaction between Concordia and Corso closed, Express Scripts (one of Complete Medical's vendors) told Corso that it had found more than $4.3 million in billing "discrepancies." *Id.* at 54. Express Scripts said that it would withhold that amount from future payments. *Id.* Corso did not tell Concordia before the deal closed.

Concordia found out a few months later, when Express Scripts withheld nearly $1.1 million. *Id.* at 67–69. Combined with some smaller indemnifiable events, even Corso agrees that Concordia was entitled to at least $1.2 million in setoffs. *Id.* at 128–30, 144; D.I. 46 at 5. Concordia, on the other hand, contends that it should get to set off the full $4.3 million report from Express Scripts. *See* D.I. 41 at 19–20.

Corso did not appreciate Concordia's nonpayment. In 2015, his lawyer sent Concordia a letter saying that "my client exercises his right" to accelerate the contract. D.I. 43 at 122. But when Concordia ignored him, he did not sue. So too in 2016. *Id.* at 140. And again in 2017. But unlike the two previous letters, the one in 2017 was

conditional. It said that "*if* Concordia does not cure the default [in a few weeks], Mr. Corso *will* exercise his right" to accelerate the payments. D.I. 47 at 22 (emphases added). And in 2020, he made a "demand for payment," but not for full payment. D.I. 43 at 148. Instead, he again said the remaining balance "*will* be due and payable in full" in the future. *Id.* (emphasis added). Nothing in the record shows that Corso followed up on these threats.

### C. Summary judgment

Corso alleges several breaches. Broadly, he says Concordia breached the contract by failing to pay him principal and interest. Compl., D.I. 1 ¶¶ 17–20. On top of breaches for each payment, he says dissolving Complete Medical breached the implied covenant of good faith and fair dealing. *Id.* ¶¶ 21–25. He also says this breach prevented Complete Medical from meeting its earnings targets, so the earnings condition on the principal payments should be excused. D.I. 46 at 14–15.

The parties now cross-move for summary judgment. D.I. 38, D.I. 45. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And a fact is "material" if it "could affect the outcome." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). I view the facts in the light most favorable to the nonmovant. *Id.* at 179 n.1.

Contract interpretation is a question of law. *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017). Delaware law uses the objective

theory of contracts, meaning that I must give effect to the whole agreement through the contract's express terms. *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014).

## II. THE STATUTE OF LIMITATIONS

I start with the statute of limitations. But to determine which statute of limitations applies, I must decide (1) which state's law applies and (2) what kind of contract this is.

### A. Choice of law

Corso's claims arise under state law. So state law provides the substantive law while federal law determines procedure. 28 U.S.C. § 1652. Because statutes of limitations are outcome-determinative, they are substantive. *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 107–10 (1945). Thus, the applicable statute of limitations is a state-law question.

But the parties dispute *which* state's law applies. Concordia says it should be Delaware's; Corso wants New York's. As a starting point, I apply the choice-of-law rules of the forum state, Delaware. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Though the contract asserts that Delaware law will apply "without regard to conflicts-of-laws principles," that does not end the matter. Delaware law requires that a choice-of-law provision specify that it includes the statute of limitations. *See Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015); *Weinstein v. Luxeyard, Inc.*, 2022 WL 130973, at *3 (Del. Super. Ct. Jan. 14, 2022).

Without an explicit contractual provision, Delaware law defaults to the forum's statute of limitations (here, Delaware's itself). *See Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001); *Pivotal Payments*, 2015 WL 11120934, at *3. The

only exception is when a foreign state's statute of limitations is "inseparably interwoven" with a party's substantive rights. *Pivotal Payments*, 2015 WL 11120934, at *3 (internal quotation marks omitted).

Corso contends that New York's six-year statute of limitations should apply because that state has the "most significant relationship" to the contract. D.I. 53 at 4–6. But the most-significant-relationship test chooses the law governing the terms of the contract, not the statute of limitations. *Compare* Restatement (Second) of Conflict of Laws § 186, *with* § 142. Corso has not argued that New York's statute of limitations is "inseparably interwoven" with his rights. And there is no reason to think so: under the contract's choice-of-law clause, his substantive rights are also governed by Delaware law. *See id.* § 187; *Weinstein*, 2022 WL 130973, at *3. Because Delaware is the forum state, and no exception applies, its law supplies the statute of limitations.

## B. Interpreting Delaware law

Within Delaware law, I must figure out which statute of limitations applies. That question turns on how Delaware classifies this contract. Delaware imposes a three-year statute of limitations for most contracts. 10 Del. C. § 8106(a); *Weinstein*, 2022 WL 130973, at *4. But it extends the limitations period to six years for "promissory notes." § 8109; *Weinstein*, 2022 WL 130973, at *4.

Merely labeling a contract a "PROMISSORY NOTE" does not make it so. I must decide what the phrase means under Delaware law and whether this contract fits that description. The parties propose competing approaches. Concordia says I should look to Delaware case law. Corso says I should look to a definition in a different Title of the Delaware Code. Concordia is right.

8

Delaware courts have held that the terms "promissory note," "note," and "negotiable instrument" are interchangeable. *See Saunders v. Stella*, 1989 WL 89518, at *2 (Del. Super. Ct. June 29, 1989); *Weinstein*, 2022 WL 130973, at *5. Those terms require "a written promise by one person to pay another person, absolutely and unconditionally, a sum certain at a specified time." *Saunders*, 1989 WL 89518, at *2 (citing *Promissory Note*, *Black's Law Dictionary* (5th ed. 1979)); *accord Weinstein*, 2022 WL 130973, at *5; 6 Del. C. § 3-104(a). "[A] promise is unconditional *unless* it states: (1) an express condition to payment; (2) that the promise is subject to or governed by another writing; or (3) that rights or obligations with respect to the promise are stated in another writing." *Weinstein*, 2022 WL 130973, at *5 (emphasis added); *accord* 6 Del. C. § 3-106(a). And a "sum certain" is an amount that is "fixed" and "can be ascertained from the document." *Sum Certain*, *Black's Law Dictionary* (11th ed. 2019). So Delaware precedent holds that a "promissory note" must be an unconditional promise to pay a fixed amount of money at a particular time.

Corso, on the other hand, points to the definition of "promissory note" in 6 Del. C. § 9-102(a)(65): "[A]n instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds." His argument has several flaws. Most importantly, this definition applies to only the part of the Delaware Code in which it appears: Article 9, which covers secured transactions. § 9-102(a). And Corso's agreement with Concordia was clearly not a secured transaction.

Even on its own terms, Corso's definition does not get him where he needs to go. It begins with "an instrument." Within Article 9, "'Instrument' means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation … and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." §9-102(a)(47). A "[n]egotiable instrument" is "an unconditional promise … to pay a fixed amount of money … at a definite time." *See* §9-102(b) (incorporating the definition from §3-104(a)). So at least under the first half of Corso's definition, the promise must be unconditional, for a fixed amount, and at a specified time.

As for the latter half, Corso has not addressed whether this contract would be transferred in the ordinary course. And I will not go down the ordinary-course rabbit hole to make his argument for him. By all accounts, then, a "promissory note" must include a definite promise, amount, and time.

Context confirms promissory notes' focus on definiteness. For instance, the six-year statute of limitations applies to both "promissory note[s]" and "bill[s] of exchange." 10 Del. C. §8109. Bills of exchange are similarly "unconditional written order[s]" from one party to another to pay a third party "a specified sum … at a fixed or ascertainable future time." *Bill of Exchange*, *Black's Law Dictionary* (11th ed. 2019). Plus, a different six-year statute of limitations applies to notes "payable at a definite time." 6 Del. C. § 3-118(a).

These contextual clues reflect sensible policy. True, one might think that breaches of definite contracts would be easier to discover and thus should have a shorter

limitations period. But Delaware law accomplishes two things. First, it encourages parties to reduce their agreements to concrete terms in a single document. Second, it avoids evidentiary staleness. If the contract is complex and refers to things beyond its four corners, there is a greater risk of relevant evidence going stale. But a simple, definite contract needs little evidence beyond the contract itself. It is not absurd to read Delaware law as prioritizing the latter two concerns.

Corso's argument would undercut Delaware's policy. His argument boils down to the idea that any written promise to pay money is a "promissory note" that gets a six-year statute of limitations. But that would eat up the distinction between "promise" and "promissory note," doubling the limitations period for almost all written contracts. I decline to upset Delaware courts' interpretations of Delaware law. So a "promissory note" must include a definite promise, amount, and time.

### C. Applying Delaware law to this contract

This contract is not a promissory note. It is not (1) an unconditional promise (2) to pay a fixed amount (3) at a specified time. First, the contract included "an express condition to payment" and was "subject to … another writing." 6 Del. C. § 3-106(a). Principal payments were conditioned on Complete Medical's earnings. And the payments were subject to the indemnification provisions of the other transaction agreements. Second, the amount was not fixed. Again, each principal payment depended on earnings. And the total principal was "up to" $4.2 million or whatever Concordia had paid by October 25, 2020. Third, the payments did not have a fixed timeframe. Concordia's obligations expired upon "the earlier of" full payment *or* October 25, 2020.

11

Even taking each installment as a separate promise, none was definite on the first two dimensions.

For the same reasons, Corso's backup argument applying the different six-year limitations period for a "note payable at a definite time" also fails. §3-118(a). Here, "note" is a subset of "instrument." §3-104(e). And "'[i]nstrument' means a negotiable instrument." §3-104(b); *see also* §3-102(a) (applying that part of the Delaware code to only negotiable instruments). Negotiable instruments are definite promises to pay definite amounts at definite times. §3-104(a). As explained above, this contract was not. So this six-year limitations period is also inapplicable.

Corso has yet another fallback. He says that even if the principal payments were indefinite, the promise to pay interest was definite. True, that promise was not conditioned on Complete Medical's earnings. But it was still subject to setoffs governed by a separate writing. It was also tied to the outstanding principal and would have run out early if the principal was paid off before 2020. So the promise to pay interest was conditional, for an indefinite amount, and at an indefinite time.

Plus, it is unclear whether a promise to pay interest alone could ever constitute a promissory note. Delaware defines a "negotiable instrument" as a promise to pay a "fixed amount of money, with or without interest." §3-104(a). One could plausibly read that definition to mean that interest is merely appended to a promissory note and is not a promissory note in itself. In any event, the whole contract here was an ordinary "promise," not a "promissory note," and the three-year statute of limitations applies.

**D. There is no reason to toll the limitations period**

Corso next argues that even if the contract is not a promissory note, the statute of limitations should be tolled. Because Concordia "repeatedly represented" that it viewed the contract as a promissory note, he says, "[i]t would be inequitable" for Concordia to invoke the three-year statute of limitations. D.I. 53 at 13.

Corso bears the burden of justifying tolling. *Weinstein*, 2022 WL 130973, at *6–7. He asserts only equitable tolling, which requires "wrongful self-dealing … where a plaintiff reasonably relies on the competence and good faith of a fiduciary." *Id.* at *8 (internal quotation marks omitted). Here, Concordia was not Corso's fiduciary, and he does not allege self-dealing. So I will not toll the statute of limitations.

Even if I broadly construed Corso's argument to include estoppel, fraudulent concealment, or the like, it would still fail. Concordia never affirmatively represented that the "PROMISSORY NOTE" was a "promissory note." Even in Corso's examples, Concordia used the term just to refer to the agreement. *See* D.I. 53 at 9–10, 13. And all but once, it capitalized "Promissory Note" to make that clear. *Id.*

Concordia never made a binding admission otherwise. Admissions are limited to questions of fact. *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 474 (Del. 1989). But the meaning of "promissory note" within a statute is a question of law. Corso points to no instance in which Concordia represented that the contract was definite along any of the three key dimensions. So Concordia did not admit to any facts relevant to whether the agreement was a "promissory note" under Delaware law.

13

### E. The time-barred claims

Under the three-year statute of limitations, some but not all of Corso's claims are time-barred. He filed his complaint in March 2021. Compl., D.I. 1. In general, install-ment-payment claims accrue as the payments become due. *Worrel v. Farmers Bank of State of Del.*, 430 A.2d 469, 476 (Del. 1981); *Bd. Of Trs. of Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp.*, 43 F.3d 852, 857 (3d Cir. 1994). Because they accrued before March 2018, Corso's claims for the 2014, 2015, 2016, and 2017 pay-ments are untimely. But his 2018, 2019, and 2020 claims clear this first hurdle. (Later, I will get to Corso's attempts to accelerate.)

Corso's implied-covenant claim is barred too. It also has a three-year statute of limitations. *Lavender v. Koenig*, 2017 WL 443696, at *3 (Del. Super. Ct. Feb. 1, 2017), *aff'd*, 171 A.3d 1117 (Del. 2017). And it accrued when Concordia supposedly breached. *Id.*; *Kahle*, 43 F.3d at 857; 13 *Williston on Contracts* §39:12 (4th ed. 2022). According to Corso, Concordia breached the implied covenant when it dissolved Complete Med-ical. *See* D.I. 46 at 14–15; D.I. 53 at 17. That happened in 2015. *See* D.I. 43 at 140, 142. So this claim is untimely.

The excused-condition angle on Corso's implied-covenant claim fares no better. (And because Complete Medical did not earn anything after 2015, this angle is his only way to recover principal.) Though he does not connect the dots, one could argue that even if a claim for breach is barred, the breach itself could still have excused the earnings conditions on the principal payments as they "bec[a]me due." Restatement (Second) of Contracts §245 cmt. a. That conclusion could mean that the claims for the 2018, 2019, and 2020 principal payments were timely.

Yet under the total-breach doctrine, those claims accrued in 2016. According to Corso, Complete Medical's dissolution excused the earnings condition on every later principal payment. The first of those payments was due in October 2016. Concordia did not pay then. And a month later, it sent him a letter saying it would not make any future payments. D.I. 43 at 142. That combination was a total breach. *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530, at *8 (Del. Ch. Nov. 2, 2017) ("[A] breach by non-performance accompanied by or followed by a repudiation gives rise to a claim for damages for total breach." (quoting Restatement (Second) of Contracts § 243(2))), *aff'd*, 202 A.3d 509 (Del. 2019). And a total breach "triggers the statute of limitations for the entire contract." *Id.* at *9. So the three-year limitations period for the principal payments began to run in late 2016. Those claims are thus untimely.

This total-breach rule bars all claims for principal, but not those for interest. The interest payments fall under an exception:

> Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole[,] whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach.

*Id.* at *10 (quoting Restatement (Second) of Contracts § 243(3)).

The only remaining duties were on Concordia (the purportedly breaching party) to pay money in installments. And the interest installments were not related to each other. In "the circumstances," the failure to make one interest payment did not "substantially affect [Corso's] expectation" in future ones. Restatement (Second) of Contracts § 243(3) cmt. c. So the limitations period on the interest payments began to run

as each one came due, rather than upon Complete Medical's dissolution. Thus, the 2018, 2019, and 2020 interest-payment claims are still timely.

By contrast, the principal payments were related and thus covered by the total-breach rule. They were all tied to Complete Medical's earnings or, more to the point, existence. *See id.* (explaining that payments can be related through "the requirement of the occurrence of a condition with respect to more than one of them"). Though one could frame each principal payment as having its own earnings condition, dissolving Complete Medical "substantially affect[ed] [Corso's] expectation" in all future principal payments. *Id.* Plus, the principal payments were related in another way: if the early ones were large enough to pay off all the principal, the later ones would have vanished. So these payments were related, and Corso's claims to them are untimely.

Once the dust settles, only the claims for interest payments in 2018, 2019, and 2020 remain.

### III. CORSO RECOVERS THE LAST THREE INTEREST PAYMENTS

The statute of limitations narrows this case to the 2018, 2019, and 2020 interest payments. Though the parties dispute whether these were subject to setoff, they do not dispute the material facts underlying that disagreement. Because interpreting the contract settles the dispute, it is fit for summary judgment.

#### A. The setoffs lasted until October 2016 or 2017

1. *Totaling the valid setoffs.* To determine whether Concordia owed Corso anything for the last three interest payments, I must first determine Concordia's setoffs. It is undisputed that Express Scripts sent a $4.3 million "Discrepancy Evaluation Report" but withheld only $1.1 million. D.I. 43 at 192. It stopped withholding once Concordia

16

got a new state license. *Id.* On top of that $1.1 million, the parties also agree that Corso owed Concordia more than $100,000 for a lawsuit and nearly $30,000 for a dispute with another pharmaceutical company. *Id.* at 149, 192. The exact amounts of these smaller setoffs are disputed, but the potential difference of a few thousand dollars ends up not mattering here. All agree that Concordia was entitled to at least $1.2 million in setoffs. *Id.*

And Concordia was entitled to nearly all that setoff amount before Corso's first payment came due. Recall that for Concordia to exercise its setoff right, it must have provided notice and either reached an agreement with Corso or gotten a final judgment fixing damages. Concordia asserts that "'Damages [were] agreed to' and the indemnification was fixed by early 2014." D.I. 41 at 21 (alteration in original). Corso concedes that argument. He agrees that Concordia validly set off the payments from 2014 through 2016. D.I. 46 at 9–11; D.I. 53 at 15 n.7. At least some record evidence backs up this point. D.I. 43 at 65, 67–69, 80, 83. Though the 2014 agreement seemed to stipulate only to the $1.1 million, Corso had agreed to $1.2 million by November 2016 at the latest. D.I. 43 at 144. If the timing were otherwise, it might matter. But for our purposes, we can think of Concordia as having $1.2 million in setoffs beginning in 2014.

Concordia argues that it should get to set off the full $4.3 million discrepancy report. Not so. Under the setoff provisions, Corso "will indemnify" Concordia for "all Damages which [Concordia] may incur or suffer" from a specified set of potential events. D.I. 47 at 78 §10.2. "Damages" were defined as "any loss, damage, injury,

award, fine, penalty, Tax, fee or expense." *Id.* at 31. These terms all imply actual costs—not potential ones. *See Indemnify*, *Black's Law Dictionary* (11th ed. 2019) ("To reimburse (another) for a loss suffered because of a third party's or one's own act or default."); *Incur*, Garner's Dictionary of Legal Usage (3d ed. 2011) ("[T]o run into (some undesirable consequence)."); *Suffer*, *Black's Law Dictionary* (11th ed. 2019) ("To experience or sustain … injury.").

The same goes for Concordia's half-hearted attempt to invoke common-law setoff. An "unmatured obligation which is not presently enforceable cannot be the subject of set-off." 80 C.J.S. *Set-off and Counterclaim* §5; *see also generally TIFD III-X LLC v. Fruehauf Prod. Co.*, 883 A.2d 854 (Del. Ch. 2004) (citing C.J.S. *Set-off and Counterclaim* approvingly). So, in all, Concordia was entitled to just $1.2 million in setoffs.

2. *Concordia's withholdings.* Concordia used these setoffs. In October 2014, Corso was entitled to $480,000 of principal plus $252,000 in interest. But Concordia validly exercised its right to "withhold and set off" those amounts. So after 2014, $3,720,000 remained on the principal balance. At the 6% interest rate, each subsequent interest payment was supposed to be $223,200. And Concordia had about $468,000 remaining in setoffs ($1.2 million − $480,000 − $252,000 = $468,000). In October 2015, Concordia again validly set off the $223,200 interest payment. Corso concedes that Concordia owed no principal that year. So up to at least October 2016, Concordia had enough setoffs to cover everything it owed.

When the October 2016 payment came due, Concordia's setoffs reservoir was down to about $244,800 (or $144,800 if Corso had by then agreed to only $1.1 million).

18

Concordia again set off $223,200 in interest. So it had roughly $21,600 in setoffs remaining (or it had exceeded its setoffs). Any remaining amount was then depleted in October 2016 or 2017. If Corso is right that the earnings condition was excused for all principal payments after Complete Medical's dissolution, then Concordia would have owed an October 2016 principal payment, exceeding any remaining setoffs. (Though his prevention claims are untimely, prevention could still mean that Concordia owed principal in 2016, counting against its setoffs.) If Corso is wrong about post-dissolution principal payments, Concordia still would have owed another $223,200 in interest in October 2017. So Concordia's obligations exceeded its setoffs by October 2016 at the earliest or October 2017 at the latest. Thus, it owed the full amount of the 2018, 2019, and 2020 interest payments (the only timely claims), totaling $669,600.

Concordia does not contest Corso's interest calculations or that interest payments were due even when principal payments were not. Instead, it tries to stitch together its setoffs and the statute of limitations. It says that the pre-2018 claims are barred by the statute of limitations anyway, so I should apply its setoffs to the remaining $669,600. That argument simply ignores how events unfolded. The contract gives Concordia "the right to withhold and set off against any amount due hereunder." D.I. 1-1 § 1.4. Concordia exercised that right each year. And it told Corso that it was doing so. *See, e.g.*, D.I. 43 at 67–69, 146–47. If Corso had tried to sue in 2015, he would have lost because Concordia simply would have pointed to its setoffs. Now that Corso sues for the payments after those setoffs ran out, Concordia cannot create a

convenient patchwork of time-barred and set-off claims. *Cf. Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12–13 (Del. 2000) (explaining equitable estoppel).

### B. Corso never accelerated the contract

Concordia is not through with the statute of limitations. "It is undisputed," Concordia says, "that Corso sent letters alleging default and purportedly accelerating the 'Promissory Note' on March 31, 2015, June 3, 2016, and in late 2017." D.I. 59 at 11. The issue is whether those "purported[]" accelerations had any legal effect. If they did, then Corso's whole claim is barred: upon acceleration, the statute of limitations begins to run for the whole contract. 12 Am. Jur. 2d § 570; *Worrel*, 430 A.2d at 476.

But Corso never accelerated the contract—despite his best efforts. Take it step by step. First, go back to the contract. It says that Corso "may … by written notice to [Concordia], declare the entire" amount due "[u]pon the occurrence of an Event of Default." D.I. 1-1 § 2.3. And the relevant "Event of Default" is Concordia's failure "to pay any amount of principal or interest due under this Note." § 2.1(c). So Corso had the power to accelerate only if Concordia first failed to pay an amount that was due, not merely if it declared that it would not pay.

Now return to Corso's acceleration attempts. In March 2015 and June 2016, his lawyer sent letters declaring that "my client *exercises* his right … to declare the entire" contract due. D.I. 43 at 122 (emphasis added); *accord id.* at 140. But the setoffs gave Concordia the right to "withhold … any amount due" in October 2014 and 2015. D.I. 1-1 § 1.4. So, by June 2016, it had not "fail[ed] … to pay any amount … due under th[e] Note." § 2.1(c). Thus, Corso had no power to accelerate.

20

And in his later letters he did not assert his acceleration right. The 2017 and 2020 letters were conditional. They said he "will" declare the full amount due. D.I. 47 at 22. But nothing in the record shows that Corso *did* exercise that right. So even though Corso had the power to accelerate in October 2016 or 2017, he did not exercise it.

Thus, Corso's claims for 2018, 2019, and 2020 interest payments are (1) timely, because Corso did not accelerate them and (2) successful, because Concordia ran out of setoffs in October 2017 at the latest.

### C. Corso is not owed any principal

Finally, Corso argues that the contract unconditionally required Concordia to pay the full principal amount by October 25, 2020. That argument borders on frivolous. The contract clearly contemplated a world in which Corso got no principal payments. It said Corso would receive "up to" $4.2 million, depending Complete Medical's performance, and it set the 2020 deadline as an alternative to Corso's "being paid in full." D.I. 1-1 at 2, §1.1 That deadline came and went. Corso is not entitled to more.

\* \* \* \* \*

Putting the pieces together, Corso is owed $669,600 for the 2018, 2019, and 2020 interest payments. Principal and interest payments from 2014 and 2015 were validly set off and are time-barred anyway. And though Concordia's setoffs came up short in 2016 or 2017, Corso's claims to that money are also untimely. The same goes for his implied-covenant claim. Yet he did not effectively accelerate after Concordia was in default, so his later claims are not barred. Thus, Corso recovers $669,600, but no more.